The **ROBERT W. YOAK EQUITY TRUST, through Leora A. YOAK, Trustee, and Robert W. Yoak, Plaintiffs,**

v.

**COMMISSIONER OF THE INTERNAL REVENUE SERVICE, Defendant.**

Civ. A. No. 86–0113–P(J).

United States District Court,
W.D. Kentucky,
Paducah Division.

Nov. 3, 1988.

Leora A. Yoak, Benton, Ky., pro se.

Jeffrey L. Shrom, Missoula, Mont., for plaintiffs.

Joseph M. Whittle, U.S. Atty., Richard A. Dennis, James H. Barr, Asst. U.S. Attys., Louisville, Ky., Michael J. Martineau, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION

JOHNSTONE, Chief Judge.

This action was brought by Leora A. Yoak, as trustee of the Robert W. Yoak Equity Trust, to temporarily and permanently enjoin the Commissioner of the Internal Revenue Service from wrongfully seizing property of the trust. Robert W. Yoak has moved to intervene as a plaintiff in this action, and the United States has filed a Counterclaim against Robert W. and Leora A. Yoak. In the Counterclaim the United States seeks judgment for delinquent joint federal income taxes assessed against Robert W. and Leora A. Yoak. Jurisdiction exists under 26 U.S.C. § 7402, 26 U.S.C. § 7426(a)(1), 28 U.S.C. § 1340, and 28 U.S.C. § 1345. The matter is before the court on cross-motions for summary judgment. The court has considered the motions and supporting memoranda which disclose no dispute as to the following material facts.

On May 2, 1975, Robert W. and Leora A. Yoak purchased the real property more fully described as:

Beginning at a point in the southeast line of Ky. Highway 1364, the same being in the west line of Tract No. 1 conveyed et

---

342

ux by deed of date May 16, 1959, of record in Deed Book 100, page 634, Marshall County Court Clerk's Office; thence, South and with the west line of Joe C. Ross property to the southwest corner thereof; thence, east 1,130 feet to a TVA concrete marker; thence, north 1,031 feet to the northeast corner of the Joe C. Ross property; thence, west and with the north line of Joe C. Ross property to the southeast line of the above mentioned highway; thence, in a southwesterly direction and with the southeast line of said Highway to the place of beginning.

Being the same property conveyed to Mason Powell et ux by Rimen Colson by deed dated October 19, 1971 of record in Deed Book 145, page 96 Marshall County Court Clerk's Office.

Subject to the reservations of oil and gas mineral rights contained in the deed from Joe C. Ross et ux to Lucy Belle Colson.

Robert W. Yoak, as grantor, established the Robert W. Yoak Equity Trust (Trust) on June 5, 1975. On June 18, 1975, through a quit claim deed, Leora A. Yoak conveyed her interest in said property to Robert W. Yoak. On July 1, 1975, Robert W. Yoak conveyed the above described property to the Trust. The stated purpose of the Trust was, *inter alia,* for the protection of personal assets, and insulation of assets from personal liabilities.

On July 27, 1982, Robert W. and Leora A. Yoak mortgaged the aforementioned property to the Bank of Marshall County, Benton, Kentucky. The amount of the mortgage was $50,000.00. On April 29, 1986, the balance due on said mortgage was $51,575.31, including interest.

On August 22, 1984, the United States assessed Robert W. and Leora A. Yoak for unpaid joint federal income taxes, penalties, interest fees and collection costs for the 1978 tax year. Another assessments was rendered on August 19, 1983 for the 1979 and 1980 tax years. A third assessment was issued on June 20, 1983 for the 1983 tax year. The Yoaks received notice and demand for the assessments totaling $7,435.31.

The Yoaks neglected to pay the tax assessments in full. The United States filed federal tax liens on all property, and rights to property, owned or thereafter acquired by the Yoaks. A notice of the federal tax liens was filed in Marshall County, Kentucky on July 17, 1984 for the liens covering tax years 1979 and 1980. A similar notice was filed on January 17, 1985 for the liens covering tax years 1978 and 1983.

On March 3, 1986, the United States caused a Notice of Levy to be served on the Yoaks for their unpaid joint federal income taxes. The United States also issued a Notice of Seizure on the real property described above which the Yoaks had transferred to the Trust. The United States claims the plaintiffs' action for injunctive relief should be dismissed because the Trust is a sham for federal income tax purposes, and that judgment should be awarded in its favor so foreclosure proceedings can commence.

In a Memorandum and Order entered March 14, 1988, the court considered the cross-motions for summary judgment. Ruling was reserved in order for the United States to produce the petition in the case of *Robert W. Yoak and Leora A. Yoak v. Commissioner of Internal Revenue,* Docket No. 8784–78. In that case, the parties agreed to be bound by the determination of the United States Tax Court in the related case of *Antonelli v. Commissioner,* T.C. Memo. 1980–544 (U.S.T.C.1980). Although the United States was unable to locate the petition, the Stipulation entered into in the previous case and the decision in *Antonelli, supra,* are contained in the record. Therefore, the facts necessary to rule on the summary judgment motions are before the court.

On January 31, 1980, in *Robert W. Yoak and Leora A. Yoak v. Commissioner of Internal Revenue,* Docket No. 8784–78, the Yoaks, through counsel, stipulated that for the purpose of that case, there was no genuine distinction between the issues raised in their petition and similar issues raised in related cases which were to be tried. Specifically, the parties agreed to be bound by the ultimate decision in the *Anto-*

*nelli, supra,* on the issue of whether income was erroneously attributed to the Yoaks by the Commissioner.

In *Antonelli, supra,* the petitioner, Phillip D. Antonelli, established a family trust to which he conveyed real and personal property including the use of his lifetime services and remuneration. Three issues were before the court: (1) whether the petitioner's conveyance of his lifetime services to a family trust effectively shifted his tax burden to the trust; (2) whether income reported by the trust was actually attributable to the petitioner; and (3) whether the underpayment of tax for the years in question constituted negligence or an intentional disregard for the tax laws. The Court held the trust lacked any economic substance, and was thus a sham for federal income tax purposes. The Court also held petitioner's wages were taxable to him, and that his actions were an elaborate charade to carry out a flagrant tax avoidance scheme.

In its Motion for Summary Judgment, the United States argues the Trust lacks economic substance, and is a sham for federal income tax purposes. It claims plaintiffs are bound by their earlier Stipulation. The plaintiffs have not resisted or tried to refute this argument. They do not contest the government's interpretation of the Stipulation, or the effect it has on the present case. Therefore, full effect will be afforded to the holding in *Antonelli, supra,* and to the Yoaks' Stipulation, *Hillman v. Commissioner of the Internal Revenue,* 687 F.2d 164 (6th Cir.1982). The earlier finding that the Trust is a sham for federal income tax purpose is conclusively binding on the parties in this action as well. The plaintiffs are not entitled to the injunctive relief. Therefore, while the court will permit Robert W. Yoak to become an intervening plaintiff, the plaintiff's 26 U.S.C. § 7426(a)(1) action to enjoin the levy on the real property conveyed to the trust will be dismissed, and their motion for summary judgment denied.

The United States motion for summary judgment will be granted. It has produced evidence that timely assessments were made against the taxpayers. The assessments are presumed to be correct. *Welch v. Helvering,* 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212 (1933); *Higginbotham v. United States,* 556 F.2d 1173, 1175 (4th Cir.1977). The plaintiffs having failed to prove said assessments erroneous, the United States is entitled to judgment as a matter of law. The United States may institute foreclosure proceedings on the real property described herein subject to the valid claims of lien holders of record. *United States v. Rodgers,* 461 U.S. 677, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983). Judgment regarding the priority of liens will be reserved.

An appropriate Order shall accompany this Memorandum Opinion.

## ORDER

For the reasons stated in the Memorandum Opinion this date entered,

IT IS ORDERED:

1. Robert W. Yoak's Motion to become an Intervening Plaintiff is GRANTED.

2. The Plaintiff's Motion for Summary Judgment is DENIED.

3. The United States Motion for Summary Judgment is GRANTED.

4. JUDGMENT is entered in favor of the United States of America and against Robert W. Yoak and Leora A. Yoak in the amount of $7,435.31, plus statutory additions accruing thereon according to law from May 9, 1986.

5. The United States of America has filed valid liens against all property, and rights to property, belonging to Robert W. Yoak and Leora A. Yoak, including the real property described in paragraph XI of the Counterclaim against them.

6. The liens of the United States of America shall attach to the real property described in paragraph XI of the Counterclaim against Robert W. Yoak and Leora A. Yoak, and that said property be sold in accordance with the law and practice of this Court.

7. The United States of America may institute foreclosure proceedings on the real property described in paragraph XI of

the Counterclaim against Robert W. and Leora A. Yoak, subject to the claims of prior valid lien holders of record.

8. Judgment regarding the priority of liens is RESERVED.

9. In the event the proceeds of the sale of the real property described in paragraph XI of the Counterclaim against Robert W. Yoak and Leora A. Yoak do not satisfy the indebtedness of Robert W. Yoak and Leora A. Yoak, the United States of America shall have a deficiency judgment against Robert W. Yoak and Leora A. Yoak for the unsatisfied amount.